**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| CORDARIO DEBOSE,<br><br>Plaintiff,<br><br>v.<br><br>TENNESSEE DEPARTMENT OF CORRECTIONS, FEDERAL BUREAU OF PRISONS, JUDGE JOHN T. FOWLKES, JR., ATTORNEY RAY LEPONE, and ATTORNEY MARY KATHERINE KENT,<br><br>Defendants. | ) | No. 2:25-cv-02695-TLP-tmp<br><br>JURY DEMAND |

## ORDER GRANTING MOTIONS TO DISMISS

On July 7, 2025, pro se Plaintiff Cordario Debose sued Defendants Tennessee Department of Corrections ("TDOC") and Federal Bureau of Prisons ("FBP"). (ECF No. 2.) Plaintiff later retained counsel. (ECF No. 9.) And on September 4, 2025, he amended his Complaint to add Defendants Judge John T. Fowlkes, Jr. ("Judge Fowlkes"), Attorney Ray Lepone ("Lepone"), and Attorney Mary Kathryn Kent ("Kent"), in their individual and official capacities. (ECF No. 11.) He then voluntarily dismissed his claims against TDOC, FBP, Judge Fowlkes in his official capacity, and Lepone in his official capacity. (ECF No. 16.) Both Lepone and Kent moved to dismiss the Amended Complaint. (ECF Nos. 20, 28.) Plaintiff responded. (ECF Nos. 26, 35.) And Lepone and Kent replied. (ECF Nos. 29, 36.)

For the reasons below, the Court **GRANTS** Lepone and Kent's Motions to Dismiss.

## BACKGROUND

In February 2011, Plaintiff entered into a plea agreement to dispose of his criminal case in the Criminal Court for Shelby County. (ECF No. 11 at PageID 22.) Kent, Plaintiff's state-appointed defense attorney, negotiated the plea agreement with Lepone, the prosecutor on Plaintiff's case. (*Id.* at PageID 23.) At the time, Plaintiff faced both federal and state charges. The state plea agreement, as Lepone stated at Plaintiff's sentencing in state court, was supposed to have "[a]ll [state] sentences . . . run concurrent to one another and concurrent to the guilty plea in federal court." (*Id.*) The federal court sentenced Plaintiff to a total of 130 months in prison.[1] (*Id.*) Judge Fowlkes, a state judge at the time, accepted the state court plea agreement and sentenced him to a total of 13.5 years with the understanding that this sentence would be served concurrently to Plaintiff's federal sentence. (*Id.*)[2]

Plaintiff pleaded guilty in federal court to brandishing a firearm in violation of 18 U.S.C. § 924(c). That statute is important for two reasons. First, Plaintiff faced a mandatory minimum sentence of 84 months imprisonment for that violation. Second, that statute prohibits any

---

[1] His federal charges included two counts of Hobbs Act Robbery and a count of carrying and using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). The Court sentenced him to 46 months for the robberies to be served concurrently with each other but consecutively to the sentence for 924(c), as required by statute. In fact 18 U.S.C. § 924(c) requires that the sentence for that violation must be served consecutively to any other sentence. *United States v. Cordario Debose*, 2:09-cr-20408-JPM-2 at ECF No. 64–65 (on October 2, 2025, this case was reassigned to Chief Judge Sheryl Lipman).

[2] To be sure, the Court must accept all factual allegations in the Amended Complaint as true for the Motion to Dismiss. But the Court is not required to scour the record for support for Plaintiff's factual claims. In places in his brief, Plaintiff's counsel left what appears to be placeholders such as "Exhibit blank at blank (with quote)" rather than replacing them with actual citations to the record. (ECF No. 11 at PageID 23–25.) These omissions, at times, cast doubt on the veracity of Plaintiff's allegations. (*Id.* ("The court also found that Plaintiff was not knowingly and voluntarily entered [sic] given the misleading information he received with regard to his plea, and that he had been misled by counsel, the prosecutor, and the judge. *Exhibit blank. Also check if the order says this.*") (emphasis added)).

sentence under it from being run concurrently with any other sentence (including state court sentences for similar conduct). (*Id.*) As a result, Judge Fowlkes, Kent, and Lepone lacked the ability to run Plaintiff's state sentence concurrently with his federal sentence for 924(c). (*Id.*) That said, Plaintiff could serve the state sentence concurrently with his sentence of 46 months for the Hobbs Act robbery convictions.

In December 2020, Plaintiff completed his 13.5-year state sentence. State officials then transferred him to federal custody to serve his federal sentence. (*Id.* at PageID 24.) Plaintiff then retained new counsel and sought habeas relief. (*Id.*) In response to his habeas petition, Judge Jon P. McCalla reduced Plaintiff's outstanding federal sentence to 84 months by running his 18 U.S.C. § 1951 conviction concurrent with the state sentence. (*Id.*) Judge McCalla could not, though, run the sentence from the § 924(c) conviction concurrently. (*Id.*) And so, Plaintiff started to serve an 84-month federal sentence on that charge. (*Id.*) Plaintiff served about 44 months of his 84-month sentence. (*Id.* at PageID 26.)

On July 18, 2024, the state criminal court hearing his post-conviction petition granted Plaintiff's request to vacate his state convictions for aggravated robbery and murder in the second degree. (*Id.* at PageID 24.) Plaintiff now sues Judge Fowlkes, Kent, and Lepone here for violations for his Fifth and Fourteenth Amendment rights under 42 U.S.C. § 1983 and for malpractice. (*Id.*) He alleges that they are liable for agreeing to concurrent sentencing for Plaintiff when they lacked the authority to control or bind federal authorities. (*Id.*) Both Lepone and Kent now move to dismiss the Amended Complaint because they assert that Plaintiff's claims against them are time-barred. (ECF Nos. 20, 28.)

The Court will now lay out the applicable legal standards.

## LEGAL STANDARD

When deciding whether a complaint states a claim on which relief can be granted, courts apply the standard of Federal Rules of Civil Procedure 8 and 12(b)(6), which the Supreme Court explains in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." It need only give the defendant fair notice of the claim and the grounds for the claim. To survive a motion to dismiss, a plaintiff must allege enough facts to "state a claim to relief that is plausible on its face." *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And the ruling court must accept all factual allegations as true. *See Crawford*, 15 F.4th at 762.

But it need not accept a plaintiff's legal conclusions or make unreasonable inferences in favor of a plaintiff. *See id.*; *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). Instead, the "complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Arsan v. Keller*, 784 F. App'x 900, 909 (6th Cir. 2019) (quoting *Commercial Money Ctr. v. Ill. Union Ins.*, 508 F.3d 327, 336 (6th Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). What is more, when reviewing a motion to dismiss, the ruling court generally restricts its review to the face of the complaint. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022). Still, in reviewing a motion to dismiss, "a court may consider exhibits attached to the complaint,

public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 410 (6th Cir. 2024).

## ANALYSIS

Kent and Lepone argue that the Court should dismiss Plaintiff's § 1983 claim (Lepone) and malpractice claim (Kent) because Plaintiff brought both claims outside the relevant statutes of limitations. (*See* ECF No. 21 at PageID 121–22; ECF No. 28-1 at PageID 149–51.) Typically, a motion to dismiss is an improper vehicle to dismiss a claim based on a statute of limitations because the accrual date of a claim is often a question of fact. *See Snyder-Hill,* 48 F. 4th at 705 (quoting *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015); *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)). But "dismissal is warranted if the allegations in the complaint affirmatively show that the claim is time-barred." *Id.* at 698 (internal quotations marks omitted).

Courts look to state law to determine the statute of limitations for § 1983 claims. *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). Tennessee has a one-year statute of limitations for "civil rights actions under § 1983." *See id.*; T.C.A. § 28-3-104(a)(1)(A). Legal malpractice claims in Tennessee also have a one-year statute of limitations. T.C.A § 28-3-104(c)(1).

Plaintiff insists that his claims are timely. (ECF Nos. 27, 35-1.) The crux of his argument is that the causes of action for both his § 1983 claim and his malpractice claim accrued when his state convictions were vacated.[3] Since he filed his Complaint within a year of that

[3] Kent disputes that the accrual date of Plaintiff's malpractice cause of action was when his state convictions were vacated. (ECF No. 28-1 at PageID 149–151.) Lepone does not dispute this claim. *See Heck v. Humphrey*, 512 U.S. 477, 486 (holding that a § 1983 claim challenging an

date, he brought his claims within the statute of limitations. (*See* ECF No. 27 at PageID 135–42; ECF No. 35-1 at PageID 172–77.)[4] Lepone and Kent insist that the claims are time-barred because Plaintiff did not name them until he filed the Amended Complaint—over a year after the state criminal court vacated his convictions.[5]

The Parties disagree over which complaint is operative for statutes of limitations purposes. The key issue here is whether the filing of the Amended Complaint relates back to the filing of the Complaint under Federal Rule of Civil Procedure 15. If so, then the filing date of the Complaint (July 7, 2025) is operative, and the claims are timely. *United States ex rel. Statham Instruments, Inc. v. Western Cas. & Surety Co.*, 359 F.2d 521, 4 523 (6th Cir. 1996). If not, Plaintiff would have needed to file the Amended Complaint within one year (July 18, 2025) and he did not. In other words, without relation back, the claims are untimely. *Id.*

## I. Timeliness of the Claims

Under Federal Rule of Civil Procedure 15(c)(1)(C) an amended complaint relates back to an earlier complaint only if certain conditions are met. One is that the new claim must arise "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed R. Civ. P. 15(c)(1)(B). If the amended complaint would change the party being sued, then the new party must have "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would

---

unconstitutional conviction or imprisonment does not accrue until the underlying conviction is vacated). Plaintiff does not argue that his claims accrued any later than July 18, 2024, and the Court finds this to be the latest date on which either cause of action could have accrued. So for this Order, the Court assumes without deciding that the claims both accrued on July 18, 2024.

[4] Plaintiff's state convictions were vacated on July 18, 2024, and Plaintiff sued here on July 7, 2025, less than one year later.

[5] Plaintiff amended his Complaint on September 5, 2025, one year and forty-nine days after his state convictions were vacated.

have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(i)–(ii).

The Court finds that the claims in the Amended Complaint arise out of "the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," given that claims in both stem from Plaintiff's conviction and unexpected incarceration. (*Compare* ECF No. 2 *with* ECF No. 11.)

But still, the Court sees two reasons why the Amended Complaint does not relate back to the Complaint. First, Lepone and Kent did not know, nor should they have known, about the suit before Plaintiff named them in the Amended Complaint. *See* Fed. R. Civ. P. 15 (c)(1)(C)(ii). Plaintiff insists that because Lepone is a state employee, represented by the Office of the Tennessee Attorney General, and because Plaintiff named the TDOC[6] as a Defendant in the original Complaint, knowledge of the lawsuit should be imputed to Lepone from the shared counsel. (ECF No. 27 at PageID 137–38.)

But Plaintiff reads the case law too expansively. Plaintiff cites cases in which a company's officers had constructive notice of a suit against their company, where new defendants had notice of a lawsuit imputed to them because they shared an attorney with the original defendants, and where state officials had notice of alleged wrongful conduct by the agency that employed them. (*See* ECF No. 27 at PageID 136–38 (citing *Kirk v. Cronvich,* 629 F.2d 404, 407 (5th Cir. 1980)*; Seber v. Daniels Transfer Co.*, 618 F. Supp. 1311, 1314 (W.D. Pa. 1985)*; Huron Valley Hosp., Inc. v. Pontiac*, 612 F. Supp. 654, 658 (E.D. Mich. 1985)*; Berndt v. Tennessee*, 796 F.2d 879, 884 (6th Cir. 1986)).) None of these cases supports the idea that an assistant district attorney, sued in his individual capacity, is or should be put on notice of a

[6] Plaintiff assumes the TDOC is also represented by Office of the Tennessee Attorney General.

lawsuit against an unrelated state agency because both the assistant district attorney and the state agency happen to be represented by the state attorney general's office.

This is especially true here because no attorney from the Office of the Tennessee Attorney General ever made an appearance on behalf of TDOC. Nor is there any proof that Plaintiff served TDOC with the Complaint. The connection between Lepone and TDOC is simply too attenuated to impute knowledge of the lawsuit to Lepone. *See Durham v. Martin*, 388 F. Supp. 3d 919, 927 (M.D. Tenn. 2019). As for Kent, the same reasoning holds true, especially given that Kent is not represented by the Office of the Tennessee Attorney General.

Plaintiff also insists that because the plea agreement negotiated by Kent was at issue in the Complaint, Kent's "role was inextricably intertwined with the challenged conduct," such that notice should be imputed onto her. (ECF 35-1 at PageID 174.) But this reasoning, which also applies to Lepone, is flawed. The Complaint does not reference Judge Fowlkes, Kent, or Lepone. Nor, as Plaintiff insists, does it allege that his plea agreement was unconstitutional. (*See* ECF No. 2; ECF No. 27 at PageID 138.) In fact, the Complaint alleges that Plaintiff's incarceration in federal custody violated his plea agreement. (ECF No. 2 at PageID 3 ("plaintiff entered into a plea agreement to serve his state sentence concurrently with his federal sentence but somehow the federal bureau of prisons dropped the ball and never took plaintiff back into federal custody . . . but when plaintiffs state time was up the federal bureau of prisons picked plaintiff up to start his federal sentence violating material terms of his contract to serve simultaneous terms of incarceration . . . .").)

The Complaint does not challenge the conduct of the lawyers or judge involved with Plaintiff's state convictions. It challenges the conduct of the entities responsible for incarcerating him. Thus the Court declines to impute knowledge or notice of the suit onto the

attorneys that negotiated his plea agreement when his Complaint did not complain about his plea agreement in the first place. *See Asher v. Unarco Material Handling, Inc.*, 596 F. 3d 313, 318 (6th Cir. 2010) ("[T]he precedent of this circuit clearly holds that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.") (internal quotation marks omitted); *see also U. S. for Use and Benefit of Statham Instruments, Inc. v. W. Cas. & Sur. Co.*, 359 F.2d 521, 523 (6th Cir. 1966) ("As a general rule, an amendment pursuant to Rule 15, Federal Rules of Civil Procedure, relates back only to the matters relating to the original parties of the complaint, or to correct a misnomer or a misdescription of defendant, and not to add or substitute a new party defendant.").

Second the Court does not find Plaintiff's decision to sue TDOC and BOP to be a mistake as it is meant in Rule 15(c)(1)(C)(ii). Plaintiff relies on a portion of the decision in *Krupski v. Costa Crociere S. p. A.* to argue that even though he knew of the existence of TDOC, Lepone, and Kent, his "mistake" over the correct Defendants to hold responsible for his unexpected incarceration is covered by Rule 15.

> Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity. For purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake. A mistake is "[a]n error, misconception, or misunderstanding; an erroneous belief." Black's Law Dictionary 1092 (9th ed. 2009); see also Webster's Third New International Dictionary 1446 (2002) (defining "mistake" as "a misunderstanding of the meaning or implication of something"; "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention"; "an erroneous belief"; or "a state of mind not in accordance with the facts"). That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity. A plaintiff may know that a prospective defendant--call him party A--exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties. The only question under Rule

> 15(c)(1)(C)(ii), then, is whether party A knew or should have known that, absent some mistake, the action would have been brought against him.

*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548–49 (2010). Plaintiff reads this language to support the argument that "[i]f a plaintiff sues the wrong person or entity because they misunderstood who was legally responsible, that is still a 'mistake' under Rule 15(c)." (ECF No. 35-1 at PageID 176.) As he puts it, "[Plaintiff's] original pro se complaint reflects a misunderstanding of who was legally responsible for the unlawful plea and resulting confinement, a classic *Krupski*-type mistake concerning identity rather than a tactical decision to omit [Defendants]." (*Id.* at PageID 176–77.)

But Plaintiff misunderstands *Krupski*. The Court takes the explanation in *Krupski* to mean that a plaintiff may know of two parties but make a mistake about the role that each played in the circumstances that lead to the injury the plaintiff incurred. It does not read it to condone relation back when a plaintiff misunderstands the law and chooses to sue the wrong defendants. That would read Rule 15's relation back rule to encompass intentional litigation choices that do not pan out. A "classic *Krupski*-type mistake" is not therefore, a "misunderstanding of who was legally responsible." Rather it is a misunderstanding about who was factually responsible. As Defendants note, "Rule 15(c) only permits amendments that correct a misnomer or misdescription of a party." (ECF No 21 at PageID 120 (citing *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010); *Bell v. P&B Mfg. Corp.*, 107 F.R.D. 371, 372-74 (W.D. Tenn. 1985); *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 556-58 (2010)).)

The Court recognizes that this result may seem harsh, given that Plaintiff unexpectedly served time in federal prison even though his state plea agreement said otherwise. But the Court notes that Plaintiff challenged his incarceration in state and federal court for years before suing here. (ECF No. 11 at PageID 24 ("Plaintiff realized he was now expected to serve his federal

sentence consecutive to, rather than concurrent with, his state sentence. . . . upon becoming aware that his plea was unenforceable, Plaintiff diligently began challenging his plea agreement, including filing a 2255 motion and retaining new counsel.”).) And he now has the same attorney here who handled his state post-conviction litigation. (*Id.*) But when he first sued here, Plaintiff represented himself. Even accepting that both the § 1983 and malpractice causes of action did not accrue until July 18, 2024, Plaintiff waited until less than two weeks before the expiration of the statute of limitations to sue pro se rather than retain counsel he had worked with successfully.

Still, Plaintiff insists that because he initially sued pro se, the Court should grant him leniency. (ECF No. 27 at PageID 138–39 (citing *Berndt v. Tennessee*, 796 F.2d 879, 882 (6th Cir. 1986); *Jacobs v. Univ. of Cincinnati*, 189 F.R.D. 510, 511 (S.D. Ohio 1999)).) But *Jacobs* directs Courts to act leniently in applying Federal Rule of Civil Procedure 4 to pro se plaintiffs, which is not at issue here. *Jacobs v. Univ. of Cincinnati*, 189 F.R.D. 510, 511 (S.D. Ohio 1999). And the Court in *Berndt* counsels leniency in permitting a pro se plaintiff to amend their complaint before dismissing it for naming the wrong defendants. The *Berndt* court explicitly notes, though, that the pro se plaintiff’s amended complaint may not relate back under Rule 15(c) after it has been amended. *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986).[7] Neither

---

[7] In *Berndt*, the plaintiff initially sued an organizational defendant, but the complaint explicitly referenced that defendant’s staff, without naming any staff members as individual defendants. The *Berndt* court remanded the case to permit the plaintiff to add as defendants the staff members that he intended to sue, while leaving the question of whether the amended complaint would relate back for the district court’s determination. *Berndt*, 796 F.2d at 883–84. This is different from the Complaint, here, where Plaintiff did not mention Judge Fowlkes, Kent, or Lepone in the Complaint. Nor does the Court agree, as Plaintiff insists, that, because the individual defendants played a role in the creation and acceptance of the plea agreement at issue and because the Complaint references the plea agreement, Plaintiff intended to sue the lawyers and state court judge that facilitated his guilty plea well over a decade ago. This is especially the case when the Complaint only puts his incarceration, and not his plea agreement, at issue and sues the agencies responsible for incarcerating him.

case Plaintiff relies on supports the contention that the Court should interpret Rule 15 expansively to permit relation back simply because a pro se plaintiff chose to sue the wrong defendants the first time.

The Amended Complaint, as it pertains to both Kent and Lepone, does not therefore relate back to the Complaint. For that reason, Plaintiff's claims against Kent and Lepone are time-barred.

For the above reasons, the Court **GRANTS** Kent and Lepone's Motions to Dismiss.[8]

## CONCLUSION

For the above reasons, the Court **GRANTS** Kent and Lepone's Motions to Dismiss and **DISMISSES** both from this case.

**SO ORDERED**, this 19th day of August, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

[8] Attorney Kent also argues that Plaintiff misapprehends the accrual date of his malpractice claim. The Court shares Kent's skepticism that Plaintiff's cause of action for malpractice did not accrue until his state convictions were vacated but need not and does not decide this case on that ground.